**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TIMOTHY R. TYLER and STEPHANIE M. TYLER, | |
| Plaintiffs, | No. 19 CV 7863 |
| v. | Judge Manish S. Shah |
| BANK OF NEW YORK MELLON, et al., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Timothy and Stephanie Tyler tried to modify the mortgage on their home. They allege that their loan servicers, defendants Bank of America and Residential Credit Solutions, among others, promised them a modification under the federal Home Affordable Modification Program if they met certain conditions. But the loan servicers failed to offer a HAMP modification and instead threatened to foreclose on the Tylers' home. The Tylers bring claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, as well as claims of unjust enrichment and promissory estoppel. Bank of America moves to dismiss the complaint under Rules 12(b)(1) and 12(b)(6), and RCS moves to dismiss under Rule 12(b)(6). For the reasons discussed below, the motions are granted.

## I.  Legal Standards

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the jurisdictional sufficiency of the complaint. *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017). In evaluating a facial attack on standing

in a 12(b)(1) motion, I accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiffs. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). If the attack is a factual one, I may look beyond the jurisdictional allegations of the complaint and examine extrinsic evidence. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, I construe all factual allegations as true and draw all reasonable inferences in the plaintiffs' favor. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 893 (7th Cir. 2018).

On a 12(b)(6) motion, I may only consider allegations in the complaint, documents attached to the complaint, documents that are both referred to in the complaint and central to its claims, and information that is subject to proper judicial notice. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). RCS and Bank of America attach the following documents to their motions, which I consider because they are referenced in and central to the complaint: a letter from Bank of America transferring the loan to RCS, [8-1] at 2; [18-4] at 2; two letters from RCS approving the Tylers for a trial loan modification, [8-4] at 2; [18-6] at 2, 5; the signed modification agreement, [8-5] at 2–8; [18-7] at 2–12; [18-8] at 2–10; a letter from RCS denying the Tylers a

2

permanent modification, [8-6] at 2; [18-9] at 2; a letter transferring the loan to Ditech, [18-5] at 2; and an executed loan modification agreement with Ditech. [8-3] at 2; [18-10] at 2–7. The Tylers do not object to consideration of these exhibits.

## II.    Background

In 2006, Timothy Tyler purchased a home in Matteson, Illinois. [1] at 2 ¶ 1.[1] He obtained a mortgage with Countrywide Mortgage. [1] at 2 ¶ 1. Two years later, Shapiro Kreisman and Associates, LLC initiated a foreclosure action against Timothy and Stephanie Tyler. [1] at 2 ¶ 2.

In 2009, the Tylers started a loan modification process with Bank of America. [1] at 2 ¶ 3.[2] Over the next six years, the Tylers' account was transferred multiple times to different loan servicers. [1] at 2 ¶ 4. Throughout that time, Bank of America and RCS refused to give the Tylers a loan modification under HAMP. [1] at 2 ¶ 5.[3]

---

[1] Unless otherwise noted, bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. Facts are taken from the complaint. The complaint includes several separately numbered sections, so citations include the page number of the complaint.

[2] The Tylers treat Bank of New York Mellon and Bank of America, N.A. as a single entity throughout the complaint. According to Bank of America, Bank of New York Mellon was the loan's investor throughout the time period at issue in the complaint, while Bank of America, N.A. serviced the loan until 2013. [18] at 9.

[3] As part of legislation passed in response to the 2008 financial crisis, Congress created an initiative to help homeowners and reduce foreclosures. *Taylor v. JPMorgan Chase Bank, N.A.*, No. 17-3019, 2020 WL 2079164, at *1 (7th Cir. Apr. 30, 2020) (citing 12 U.S.C. § 5219(a)(1)). The program offered banks incentives to allow homeowners to refinance their mortgages through programs such as HAMP. *Id.* Only certain borrowers were eligible for a HAMP modification, which involved a two-step process. *Id.* Qualified borrowers first entered a trial period plan with the lender, making reduced payments. *Id.* If the borrower complied with the terms of the TPP, the lender would offer a permanent modification. *Id.* HAMP itself does not create a private federal right of action for borrowers against servicers. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 559 n.4 (7th Cir. 2012).

In December 2015, the Tylers entered into a loan modification agreement with RCS, acting on behalf of Bank of America. [1] at 2 ¶ 7. They received a letter stating that Bank of America was the master servicer and made all decisions about modification and enforcement. [1] at 2 ¶ 6. The new loan had a $5,110 monthly payment, and interest and fees added to the principle. [1] at 2 ¶ 7. That month, the Tylers made three disputed payments meant to cover their October, November, and December payments, totaling $15,326.88. [1] at 2 ¶ 8. In February 2016, RCS told the Tylers that they were ineligible for all modification programs available on their mortgage. [1] at 2 ¶ 8.

In April 2016, Ditech took over servicing the Tylers' mortgage. [1] at 3 ¶ 9. Ditech told the Tylers that Bank of America had rejected the December 2015 loan modification, and that the Tylers should apply for a new modification. [1] at 3 ¶ 9. The Tylers were also told that they had forfeited their previous three payments. [1] at 3 ¶ 9.

The next month, Ditech, on behalf of Bank of America, requested additional documentation to complete the loan modification review, which the Tylers provided. [1] at 3 ¶ 10. The Tylers took the request for additional information as a promise that, if they provided the requested documents, they would obtain a more favorable loan using the HAMP method. [1] at 3 ¶ 10. The Tylers allege that the defendants knew the couple would rely on their request for additional documents, but did not plan to offer them a HAMP modification. [1] at 3 ¶ 10. The defendants did not offer the Tylers

a modification under HAMP, and tried to sell the house as part of the foreclosure action. [1] at 3 ¶ 10.

In July 2016, Shapiro Kreisman and Associates, LLC threatened to sell the house and presented a false affidavit in court that assessed attorney's fees and costs, insurance, preservation costs, interest, and taxes incurred on the property, bringing the Tylers' total mortgage to more than $600,000. [1] at 3 ¶ 11. The value of their home was $270,000. [1] at 3 ¶ 11.

That same month, RCS took over servicing the loan. [1] at 3 ¶ 12. RCS approved a loan modification with a new monthly payment of $2,491.70. [1] at 3 ¶ 12. In October 2016, the Tylers entered into another loan modification agreement with Ditech. [1] at 3 ¶ 14. Around the same time, the Tylers received a letter stating that their property would be sold. [1] at 3 ¶ 13. The Tylers have continued to pay under the terms of the agreement with Ditech. [1] at 3–4 ¶ 14.[4]

Because of the Tylers' reliance on the defendants' promises, the defendants made more than $400,000. [1] at 4 ¶ 15. The Tylers hired two attorneys and incurred more than $10,000 in legal fees. [1] ¶ 16.

The Tylers filed their first complaint on September 6, 2018, under the docket number 18-cv-06120 (N.D. Ill.). Dkt. No. 18-cv-06120, [2]. That complaint named Bank of New York Mellon, Bank of America Corp., and Shapiro Kreisman as defendants, and brought breach-of-contract, promissory-estoppel, ICFA, and Fair

---

[4] On April 3, 2015, the Circuit Court of Cook County entered a judgment of foreclosure against the Tylers. [18-11] at 2. On December 5, 2016, the court vacated that judgment and dismissed the action. [18-11] at 2.

Debt Collection Practices Act claims. On February 14, 2019, the Tylers filed an amended complaint naming the two Bank of America entities, RCS, and Ditech Financial, LLC as defendants. Dkt. No. 18-cv-06120, [25]. That complaint brought breach-of-contract, promissory-estoppel, and ICFA claims. Bank of America and RCS moved separately to dismiss the complaint. Dkt. No. 18-cv-06120, [33], [41]. On June 11, 2019, the Tylers filed a third amended complaint, naming the same four defendants. Dkt. No. 18-cv-06120, [47]. That complaint dropped the breach-of-contract claims, but added claims for unjust enrichment against each defendant, in addition to the ICFA and promissory-estoppel claims. RCS and Bank of America again moved to dismiss. Dkt. No. 18-cv-06120, [50], [52], [55]. On October 28, 2019, I dismissed the complaint without prejudice for lack of subject-matter jurisdiction because the Tylers had not adequately alleged Ditech's citizenship, despite being repeatedly told to do so. Dkt. No. 18-cv-06120, [62]. Because the court lacked jurisdiction, I did not reach any of the arguments RCS and Bank of America raised to dismiss the complaint on the merits.

On November 29, 2019, the Tylers filed the complaint at issue here, naming both Bank of America entities and RCS as defendants and bringing six claims. They bring one claim each against Bank of America and RCS under the ICFA (Counts I and IV), and one claim each of promissory estoppel (Counts II and V) and unjust

enrichment (Counts III and VI). RCS and Bank of America move separately to dismiss all claims.[5]

## III.  Analysis

### A.  Standing

Bank of America moves under Rule 12(b)(1) to dismiss Stephanie Tyler as a plaintiff. Since she was not a party to the mortgage, Bank of America says she does not have standing to assert any claims.

To establish Article III standing, a plaintiff must show that she suffered a concrete and particularized injury, caused by the actions of the defendant, that would likely be redressed by a favorable decision. *Bria Health Servs., LLC v. Eagleson*, 950 F.3d 378, 382 (7th Cir. 2020). The injury-in-fact standard requires a plaintiff to allege that the injury is both concrete and particularized. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016). And the plaintiff must demonstrate standing for each claim she brings. *Johnson v. U.S. Office of Pers. Mgmt.*, 783 F.3d 655, 661 (7th Cir. 2015).

It's unclear whether Bank of America intended its standing argument to be a facial or factual challenge; its brief notes both that the court should accept all well-pleaded allegations as true (referring to a facial challenge), but also observes that the

---

[5] The court has diversity jurisdiction over this action. The Tylers are residents of Illinois. [1] at 1 ¶ 1. Bank of New York Mellon's citizenship is New York. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) (a national banking association's citizenship for diversity purposes is the state where its main office is located, as set forth in its articles of association). Bank of America is incorporated in Delaware with its principal place of business in North Carolina. The proper Bank of America entity may be Bank of America, N.A., a national banking association with its main office (and thus citizenship) in North Carolina. Residential Credit Solutions is incorporated in Delaware with its principal place of business in Texas. [1] at 1–2 ¶¶ 2–4.

court can look beyond the complaint (apparently referring to a factual challenge), and it relies on an extrinsic exhibit to make its argument. [18] at 12–13, 14–15. The Tylers treat Bank of America's argument as a facial challenge. [20] at 9–10.

Facially, the complaint sufficiently alleges that both plaintiffs suffered a redressable injury caused by defendants. The Tylers allege that they were both injured by the defendants promising them a HAMP modification but refusing to deliver, while simultaneously threatening to foreclose on the home; as a result of the defendants' behavior, the Tylers say they incurred costs, fees, and interest that accrued over time, paid attorneys to fight the foreclosure, and suffered emotional damage from the impending foreclosure. The complaint asserts that both members of the couple lived in the house, were involved with pursuing a modification, and financially contributed to paying the fees and costs that accrued. The complaint sufficiently alleges that both Stephanie and Timothy Tyler suffered an injury, and they would both be made whole by a judicial determination in their favor. *See, e.g.*, *Reverse Mortg. Sols., Inc. v. U.S. Dep't of Hous. & Urban Dev.,* 365 F.Supp.3d 931, 941 (N.D. Ill. 2019) (finding plaintiff suffered an injury in fact where she faced "risk of displacement in the pending foreclosure action").

As a factual matter, Bank of America relies exclusively on the mortgage itself. Stephanie Tyler did not sign the note, and signed the mortgage to waive her homestead rights. [18-1] at 5; [18-2] at 16. Ordinarily, when a defendant produces evidence calling standing into question, "the presumption of correctness" afforded to a complaint's allegations "falls away." *Apex Digital*, 572 F.3d at 444 (quoting

*Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998)). The plaintiff must come forward with "competent proof that standing exists." *Id.*

Here, although the Tylers have not come forward with proof of standing, the pertinent facts are not in dispute. Bank of America's evidence is consistent with the complaint, which states that Timothy Tyler was the one who bought the house. [1] at 2 ¶ [1]. That Stephanie Tyler did not sign the mortgage does not mean she did not suffer an injury in the ensuing years as a result of the defendants' pattern of conduct. She lived in the house, was named as a defendant in the foreclosure action, and says she financially contributed to defending against foreclosure, as well as paid some of the costs and fees that the couple incurred from the defendants prolonging the modification process. Bank of America has offered nothing to suggest that Timothy Tyler alone bore those costs, and the mortgage by itself is inadequate to create a factual dispute about standing. *See Apex Digital*, 572 F.3d at 446 ("Although the district court is duty-bound to demand proof of jurisdiction when resolving factual disputes, it need not make such a demand when no factual dispute exists." (citation omitted)).

Whether viewed as a facial or factual challenge, Stephanie Tyler alleges injury from defendants' conduct that would be redressed by a favorable decision. She has standing to assert the claims.

9

**B.    Statute of Limitations**

Bank of America argues that the ICFA and unjust-enrichment claims against it are barred by the claims' respective statutes of limitations. Ordinarily, a complaint need not anticipate affirmative defenses, such as untimeliness. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019). Dismissal of a complaint based on the statute of limitations is appropriate only when "it is plain from the complaint" that the defense "is indeed a bar to the suit." *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010). To warrant dismissal, the statute-of-limitations defense must be "ironclad." *Foss v. Bear, Stearns & Co.*, 394 F.3d 540, 542 (7th Cir. 2005).

1.    *ICFA*

The ICFA imposes a three-year statute of limitations. 815 ILCS 505/10a(e). In Illinois, when a federal district court dismisses a claim with a statute of limitations for lack of subject-matter jurisdiction, and the statute of limitation expires while the case is pending, the plaintiff may file a new action within one year of the judgment. 735 ILCS 5/13-217. The Tylers filed their original complaint, which contained its ICFA claims, on September 6, 2018. The Tylers filed the complaint at issue here one month after I dismissed the original case for lack of jurisdiction. So any ICFA claim that accrued before September 2015 would be untimely. A claim accrues under the ICFA when the plaintiff "knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Highsmith v.*

10

*Chrysler Credit Corp.*, 18 F.3d 434, 441 (7th Cir. 1994) (quoting *Knox Coll. v. Celotex Corp.*, 88 Ill.2d 407, 415 (1981)).

The Tylers allege that Bank of America's involvement in the conduct underlying their ICFA claim came from Ditech and RCS acting as "agents" of Bank of America. [1] at 2 ¶ 3; 4 ¶ 2. The only individualized allegation against Bank of America is that the Tylers received a letter in December 2015 stating that all decisions regarding modification of their loan "fell under the authority of the master servicer, Bank of America." [1] at 2 ¶ 6. And when Ditech took over the loan in April 2016, Ditech allegedly told the Tylers that Bank of America had rejected their December 2015 loan modification request, and they should apply again. Bank of America argues that it stopped servicing the Tylers' mortgage on September 16, 2013. It attaches a letter to the Tylers, dated August 27, 2013, stating that Bank of America was transferring the loan to RCS the following week. [18-4] at 2. The Tylers allege that Bank of America remained involved in their mortgage until either September or December of 2016, "through its agents." [20] at 4. I take the Tylers to be arguing that, although Bank of America, N.A. was no longer servicing the loan after 2013, RCS and Ditech were working as agents of Bank of New York Mellon, the loan's investor during the relevant time period. To determine whether Bank of America or Bank of New York Mellon acted within the applicable limitations period, it is necessary to first consider whether they may be held liable for the actions of another entity on this complaint.

A complaint relying on an agency relationship must plead facts that, if proven, could establish the existence of an agency relationship. *Bogenberger v. Pi Kappa Alpha Corp., Inc.*, 2018 IL 120951, ¶ 28; *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 498 (1996). A "mere allegation of agency is insufficient." *Bogenberger*, 2018 IL 120951, ¶ 28. Rather, the plaintiff must show that: (1) a principal-agent relationship existed; (2) the principal controlled or had the right to control the conduct of the agent; and (3) the alleged conduct of the agent fell within the scope of the agency. *Id.*

Agency may be either actual or apparent, and actual authority may be express or implied. *Zahl v. Krupa*, 365 Ill.App.3d 653, 660–61 (2d Dist. 2006). An agent has express authority when the principal explicitly authorizes the agent to perform a particular act, and the agent acts on the principal's behalf and subject to the principal's control. *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 357 (7th Cir. 2020); *Zahl*, 365 Ill.App.3d at 660–61. Implied authority is actual authority proved by circumstantial evidence, or authority that is inherent in an agent's position. *Zahl*, 365 Ill.App.3d at 660–61. Apparent authority arises when the principal holds the agent out as possessing the authority to act on its behalf, and a reasonably prudent person would assume the agent to have this authority. *Id.*; *see also Warciak*, 949 F.3d at 357 (apparent authority exists where a third party reasonably relies on the principal's manifestation of authority over the agent).

The Tylers' complaint does not plausibly allege that RCS and Ditech were acting as agents of Bank of America or Bank of New York Mellon. They do not allege that the banks expressly authorized RCS or Ditech to act on their behalf, that the

banks held out RCS or Ditech as working on their behalf, or that RCS or Ditech consented to acting under the banks' control. The Tylers have thus not pleaded express authority. They fare no better on implied authority. Agency is not inherent in the relationship between the banks, as the loan's investor, and Ditech and RCS, as the loan's servicers. A loan servicer could conceivably be an agent of an investor, but that relationship is not automatic; a plaintiff must establish that the relationship exists. *See Sak v. CitiMortgage, Inc.*, 940 F.Supp.2d 802, 804–05 (N.D. Ill. 2013) (rejecting argument that loan servicer was mortgage owner's agent because record did not show adequate control); *cf. Advance Mortg. Corp. v. Concordia Mut. Life Ass'n*, 135 Ill.App.3d 477, 481 (1st Dist. 1985) (agency existed between investor and loan servicer because written agreement established the relationship). And the complaint alleges no circumstantial evidence that would support an inference of implied agency. The Tylers received a letter stating that Bank of America, as the master servicer, made all decisions about loan modification. But that assertion alone cannot support the assertion that RCS and Ditech worked on behalf of Bank of America—as alleged, the letter says nothing about RCS, Ditech, or any other servicer. And at the same time, the complaint contradicts itself by blaming RCS directly for denying the Tylers' requests for a HAMP modification.

The Tylers cannot plausibly plead apparent authority, either. No reasonable person could believe that the banks exercised authority over RCS or Ditech. Bank of America explicitly told the Tylers that once it transferred the loan to RCS, RCS would make any decisions about loan modification. Bank of America's transfer letter stated

13

that, while the loan's investor or owner determined which modification programs RCS could offer, any decisions regarding the Tylers' qualification for loan modification programs "will now be made by Residential Credit Solutions." [18-4] at 3. The Tylers knew it was solely up to RCS to approve or deny their request for a loan modification, and no reasonable person could believe otherwise. While the Tylers allege that Ditech said Bank of America denied one of their loan modification requests, which arguably could support the impression that Bank of America controlled Ditech's decision, "[s]tatements by an agent are insufficient to create apparent authority." *Warciak*, 949 F.3d at 357. The allegation establishing agency would have to come from Bank of America itself, not Ditech. All told, the Tylers have offered only "mere allegation[s] of agency," and they have failed to allege facts suggesting they could prove any agency relationship existed. *See Bogenberger*, 2018 IL 120951, ¶ 30 (plaintiff failed to allege that principal had control over agent or that agent's actions fell within scope of agency relationship); *Connick*, 174 Ill.2d at 498 (same, where complaint contained only "mere legal conclusions" and no facts to suggest that alleged agent had actual or apparent authority to act on principal's behalf).

Because the Tylers have failed to allege an agency relationship, the banks can be liable only for their own conduct. The Tylers' complaint does not allege that the banks committed any act within the applicable limitations period. Thus, it is plain from the face of the complaint that the statute of limitations bars the Tylers' ICFA

claim against Bank of America and Bank of New York Mellon. Count I is dismissed as untimely.

### 2. *Unjust Enrichment*

A claim for unjust enrichment in Illinois must be brought within five years of accrual. *Blanchard & Assocs. v. Lupin Pharm., Inc.*, 900 F.3d 917, 922 (7th Cir. 2018) (citing 735 ILCS 5/13-205). Unjust enrichment occurs when the defendant "retained a benefit to the plaintiff's detriment." *Id.* (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 160 (1989)).

The Tylers brought an unjust-enrichment claim for the first time in their third amended complaint, filed on June 11, 2019, in case number 18-cv-6120. So Bank of America argues that the unjust-enrichment claim must have accrued after June 11, 2014. I disagree. An amendment to a pleading relates back to the date of the original pleading when the law that provides the applicable statute of limitations (here Illinois law) allows relation back, or the amendment adds a claim that arose out of the same conduct, transaction, or occurrence as the original claim. Fed. R. Civ. P. 15(c)(1)(A)–(B). Since there is "no meaningful distinction … between Illinois law on relation back" and Rule 15, the outcome under either state or federal law is the same. *Hahn v. Walsh*, 762 F.3d 617, 635 n.37 (7th Cir. 2014); *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 515 (7th Cir. 2011) ("Under Illinois law as under federal law, an amendment relates back when it arises out of the same transaction or occurrence set up in the original pleading." (quoting *Phillips v. Ford Motor Co.*, 435 F.3d 785, 788

15

(7th Cir. 2006))); *Lawler v. Univ. of Chi. Med. Ctr.*, 2017 IL 120745, ¶ 20; *Bryson v. News Am. Publications, Inc.*, 174 Ill.2d 77, 108 (1996).

The Tylers' unjust-enrichment claim is based on the same course of conduct that they allege in their ICFA claim. So the claim relates back to their original pleading, filed on September 6, 2018. Any unjust-enrichment claim must have accrued after September 6, 2013. Bank of America transferred the loan ten days later. It is not clear from the complaint that Bank of America could not have retained some unjust benefit in that time period, so the unjust-enrichment claim is not obviously time-barred. At this stage of the case, I can't resolve the timeliness of the claim.

### C.    Failure to State a Claim

Both Bank of America and RCS argue that the complaint has failed to state a claim. At the outset, the complaint fails to state any claim against Bank of America for the same reasons discussed above with regard to the statute of limitations: the Tylers do not attribute any of the alleged actions to Bank of America itself, and they have failed to plead any facts that could, if proven, establish an agency relationship between Bank of America and any other entity. Count I is dismissed as both untimely and for failure to state a claim, and Counts II and III (promissory estoppel and unjust enrichment against the banks) are dismissed for failure to state a claim.

RCS and Bank of America also urge dismissal on the basis that the complaint is incoherent and fails to distinguish between defendants. I disagree. To be sure, a complaint that is based on a theory of "collective responsibility" must be dismissed, because each defendant is "entitled to know what he or she did." *Bank of Am., N.A.*

16

*v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). While the complaint refers to the defendants collectively in spots, it adequately puts the defendants on notice of who allegedly did what, and when. The complaint distinguishes between the modification agreements the Tylers considered or entered into with RCS and Ditech respectively, and explains when RCS and Ditech each serviced the loan. Though Ditech is not a party, it was allegedly working as Bank of America's proxy and, if the claims against Bank of America weren't dismissed, the allegations would sufficiently notify Bank of America of the conduct it is accused of doing through Ditech. The complaint is not dismissed for failing to meet Rule 8(a)'s notice requirement.

### 1. ICFA

The Illinois Consumer Fraud Act protects customers against "fraud, unfair methods of competition, and other unfair and deceptive business practices." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019) (quoting *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403 416 (2002)); *Benson*, 944 F.3d at 645–46. To state a claim for an ICFA violation, a plaintiff must plead that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages, meaning pecuniary loss. *Vanzant*, 934 F.3d at 736; *Benson*, 944 F.3d at 647. The plaintiffs must also plead causation—that "but for the defendant's deceptive or unfair conduct," they would not have been damaged. *Vanzant*, 934 F.3d at 739.

An ICFA claim may be based on a deceptive act, an unfair act, or both. *Id.* at 738. The two types of claims are distinct, and different pleading standards apply to

17

them. *Id*. If the claim is based on deception, Rule 9(b)'s heightened standard for pleading fraud applies. *Id*. The plaintiff must plead with particularity the "who, what, when, where, and how" of the alleged fraud. *Id*. A practice is deceptive if it "creates a likelihood of deception or has the capacity to deceive." *Benson*, 944 F.3d at 646 (quoting *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001)).

If the claim is based on unfair conduct, only Rule 8 applies. *Vanzant*, 934 F.3d at 739. To determine whether a practice is unfair, courts consider three factors: whether the practice offends public policy; whether it's immoral, unethical, oppressive, or unscrupulous; or whether it causes substantial injury to consumers. *Id*. A plaintiff need not satisfy all three factors; a practice may be unfair because of the degree to which it meets one of the criteria or because it meets all three to a lesser extent. *Vanzant*, 934 F.3d at 739; *Benson*, 944 F.3d at 647.

The complaint appears to allege that the defendants' conduct was both deceptive and unfair, but the Tylers' brief argues only that the conduct was deceptive. The Tylers' theory is that the defendants lured them into thinking they would receive a HAMP loan modification. Instead, the defendants rejected the Tylers' requests for a HAMP modification, offered them exorbitant loan modifications, and threatened to foreclose upon and sell the property. As I read the complaint, the Tylers' theory of misconduct sounds in unfairness. But in the interest of completeness, I address both theories, beginning with whether the Tylers have stated a claim for deceptive conduct.

18

The Tylers' allegations cannot survive the heightened pleading standards of Rule 9(b). They have not identified any concrete lies that they were told, who made those misrepresentations, or when and where they were made. They do not identify any specific instance in which a representative from RCS falsely said they would receive a HAMP modification. Without specifically identifying the who, what, when, where, or how of any alleged deception, their ICFA claim based on deception fails. *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (dismissing complaint where plaintiff failed to provide "the specific names, dates, times, or content of the misrepresentations").[6]

Moreover, the Tylers' complaint alleges that multiple loan servicers serviced their loan over the course of several years, including Bank of America, RCS, and Ditech. But the Tylers do not distinguish among defendants in identifying who made deceptive comments to them. While the complaint provides the defendants adequate notice of their alleged wrongdoing for Rule 8 purposes, under Rule 9(b), a plaintiff must identify "the identity of the person making the misrepresentation." *Id.* (quoting *Uni\*Quality Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992)). In cases with multiple defendants, "the complaint should inform each defendant of the nature of his alleged participation." *Id.* (quoting *Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 777–78 (7th Cir. 1994)). Where a complaint "lump[s] together multiple

---

[6] To the extent the Tylers rely on an allegedly false affidavit filed by Shapiro Kreisman and Associates, LLC, that law firm is not a party to this case, so its false statement cannot sustain an ICFA deception claim. [1] at 3 ¶ 11; [20] at 7.

defendants," it cannot survive the heightened pleading standard of 9(b). *Id.* (quoting *Vicom*, 20 F.3d at 777–78). The Tylers have failed to state an ICFA deception claim.

The Tylers' unfairness theory fares no better. As noted above, an unfair practice is one that offends public policy; is immoral, unethical, oppressive, or unscrupulous; or causes substantial injury to consumers. (Or to some degree, all three.) The Tylers have not adequately pleaded that RCS's conduct falls into any of those categories. For example, conduct is immoral, unethical, oppressive, or unscrupulous for ICFA purposes if it leaves the consumer "with little choice but to submit to it." *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1002–03 (7th Cir. 2018). But the Tylers do not plausibly allege that RCS unfairly deprived them of alternatives. They allege the opposite. RCS offered the Tylers a non-HAMP modification and sent them a trial period plan. [8-4] at 2. If the Tylers had remained in compliance with the TPP, RCS would have "provide[d] [them] with a Modification Agreement." [18-6] at 2. The Tylers sent the TPP back and wrote next to their signatures, "Under objection/non compliant Hamp I Hamp II and or similar loan modification program." [18-6] at 5. Likewise, the Tylers signed the modification agreement a few months later, but wrote next to their signatures, "In dispute noncompliance with HAMP tier 1 and tier 2." [18-8] at 2–10; [8-5] at 2–8. RCS thus denied the Tylers a loan modification because they had rejected the terms of the proposed deal. [18-9] at 2; [8-6] at 2. RCS did not deprive the Tylers of alternatives; they retained their ability to choose between that modification and their existing mortgage, and they chose to reject the proposed modification. They suffered minimal

20

consequences as a result, as they ended up entering into a more favorable HAMP modification with Ditech a few months later. Where the Tylers felt secure in rejecting RCS's offer and holding out for a better one, they cannot plausibly say that RCS presented them with an impossible choice. *See, e.g.*, *Golbeck v. Johnson Blumberg & Assocs., LLC*, No. 16-CV-6788, 2017 WL 3070868, at *14 (N.D. Ill. July 19, 2017) (dismissing ICFA claim where plaintiff rejected TPP offers because it was "hard to view" the offers as oppressive "if Plaintiff declined them"). More generally, it wasn't oppressive or unscrupulous for RCS to deny the Tylers a loan modification when the Tylers had twice rejected the non-HAMP loan modification that RCS offered.

The Tylers fail to plead the other unfairness factors as well. To show that an allegedly unfair practice offends public policy, a plaintiff may show that the practice violates statutory or administrative rules that establish a standard of conduct, or administrative directives, such as HAMP servicing guidelines, that do not themselves provide a right of action. *See Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 740–41 (7th Cir. 2017); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 n.4 (7th Cir. 2012). For example, a plaintiff might plead that a loan servicer's outright refusal to consider him for a HAMP modification was unfair because it violated HAMP guidelines. *See David v. Bayview Loan Servicing, LLC*, No. 15-CV-9274, 2016 WL 1719805, at *6 (N.D. Ill. Apr. 29, 2016); *Boyd v. U.S. Bank, N.A.*, 787 F.Supp.2d 747, 753–54 (N.D. Ill. 2011). But here, RCS considered the Tylers' application, found they did not qualify for a HAMP modification, and offered the Tylers an alternative modification instead, which the Tylers in turn rejected. The complaint does not suggest that such conduct

violated any HAMP guideline, or any other statute or administrative rule, and the Tylers do not argue that it did.

Finally, the Tylers cannot show that RCS's conduct caused a substantial injury to consumers. To do so, they must allege that the injury was (1) substantial; (2) not outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) one that consumers themselves could not reasonably have avoided. *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 834 (7th Cir. 2014). The Tylers have made no such allegation. And they cannot state a substantial injury, since they entered into a favorable HAMP modification with Ditech shortly after RCS rejected them.

The Tylers have not stated a claim for deceptive or unfair conduct by RCS. But, to the extent amendment could salvage their claim, I disagree with the argument that the Tylers have not sufficiently pleaded that the defendants' conduct caused them pecuniary loss. The Tylers allege that, as a result of RCS denying them a HAMP modification, and the pending foreclosure action against their home, they spent $10,000 on attorneys, and had to pay the costs, fees, and interest that accrued. That is sufficient at this stage to plead that RCS caused the Tylers pecuniary loss. *See Wigod*, 673 F.3d at 575–76 (finding plaintiff's allegation that she "incurred costs and fees, lost other opportunities to save her home," and "suffered a negative impact to her credit," among other things, stated a pecuniary injury under ICFA).

Finally, RCS argues that the complaint should be dismissed because the ICFA was intended to remedy widespread consumer injury, so "purely private disputes" are

not actionable. [8] at 9–10.[7] I disagree. The Illinois legislature amended the ICFA in 1990 to specify that the Act does not require "proof of public injury, a pattern, or an effect on consumers generally." *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436 (7th Cir. 1996) (citing 815 ILCS 505/10a(a)); *see also A. Kush & Assocs., Ltd. v. Am. States Ins. Co.*, 927 F.2d 929, 939 (7th Cir. 1991). So a plaintiff suing under the ICFA may "state a claim based upon a single, isolated injury," and based "solely upon the plaintiff's own injury." *Athey*, 89 F.3d at 436. That the Tylers did not allege an injury affecting consumers more generally is irrelevant. The ICFA may remedy a single error affecting only the plaintiff, and that is what the Tylers alleged here. A loan servicer's conduct with regard to a single plaintiff's modification request can be unfair or deceptive under ICFA. *See, e.g.*, *Wigod*, 673 F.3d at 574.

Although the Tylers have plausibly alleged that RCS's conduct caused their damages, they have failed to plead that that conduct was unfair or deceptive under the ICFA. The ICFA claim against RCS is dismissed.

### 2. *Unjust Enrichment*

The Tylers also bring claims of unjust enrichment against RCS and Bank of America. There is no stand-alone claim for unjust enrichment in Illinois. *Benson*, 944 F.3d at 648. Rather, unjust enrichment is a condition that can be brought about by unlawful conduct, such as fraud or duress. Alternatively, unjust enrichment may be

---

[7] The Tylers do not respond to this argument, or to a number of other arguments the defendants make in their motions to dismiss, so any argument the Tylers' might make is waived. *See Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1054 (7th Cir. 2019). I address the arguments in the interest of completeness.

based on an implied contract. *Toulon*, 877 F.3d at 741–42. If the unjust-enrichment claim rests on the same conduct alleged in another claim, then the unjust-enrichment claim is tied to the related claim and stands or falls with that claim. *Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019); *see Vanzant*, 934 F.3d at 740 (noting unjust-enrichment claim was "tied to the fate of the claim under the Consumer Fraud Act").

Here, as the Tylers concede, their unjust-enrichment claim is based on the same conduct that forms the basis for their ICFA claim. Because the Tylers have failed to state a claim under the ICFA, they have also failed to state a claim for unjust enrichment. *See Benson*, 944 F.3d at 648 (dismissing unjust enrichment claim where plaintiff failed to state a claim under ICFA); *Toulon*, 877 F.3d at 742 (same).

Further, the Tylers cannot state a claim for unjust enrichment based on an implied contract because an actual contract—the mortgage—governed their relationship with RCS. Where an actual contract governs the relationship of the parties, unjust enrichment does not apply. *Toulon*, 877 F.3d at 742; *see also Blanchard*, 900 F.3d at 921 (unjust enrichment does not apply "when an actual contract governs the parties' relationship"). Count VI is dismissed.

### 3. Promissory Estoppel

To plead promissory estoppel, the Tylers must plausibly allege that: (1) defendants made an unambiguous promise to them; (2) they relied on that promise; (3) that reliance was expected and foreseeable by defendants; and (4) they relied on the promise to their detriment. *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 827 (7th

Cir. 2015); *Wigod*, 673 F.3d at 566. Reliance must be reasonable and justifiable. *BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 138 (7th Cir. 2011).

The Tylers say the defendants promised them that, if they made timely payments during the trial period and provided additional documentation to RCS, RCS would offer them a permanent loan modification under HAMP. [20] at 9. The Tylers say they relied to their detriment on this promise by continuing to make their monthly payments and forgoing other remedies, such as selling or refinancing their home. [1] at 6 ¶ 16; 10 ¶¶ 38, 42. Although they eventually received a permanent HAMP modification, the Tylers allege that they suffered increased fees and charges from not obtaining one sooner. [1] at 6–7 ¶ 17; 10–11 ¶ 43.[8]

The Tylers' allegation that RCS unambiguously promised them a HAMP modification if they complied with the terms of the trial period is squarely refuted by the other allegations in the complaint and the exhibits RCS submitted. When RCS approved the Tylers for a trial period plan, it explicitly stated, "you are not eligible" for a HAMP modification. RCS approved the Tylers for a non-HAMP modification instead. The Tylers cannot plausibly plead that RCS unambiguously promised them a HAMP modification, when RCS said the opposite. And the Tylers' own complaint pleads that RCS denied them a HAMP modification. None of the other communications between RCS and the Tylers contain any promise that the Tylers

---

[8] The complaint offers more detailed allegations about a promise that Ditech allegedly made. *See* [1] at 3 ¶¶ 9–10. But Ditech is not a defendant, so those allegations cannot state a promissory-estoppel claim. And, for the reasons already stated, Ditech was not acting as Bank of America's agent.

would receive a HAMP modification, and it is not plausible that RCS made such a promise—contradicting itself—in some other document. *See, e.g., Lesniak v. Bank of Am., N.A.*, 169 F.Supp.3d 766, 771 (N.D. Ill. 2015) (dismissing promissory-estoppel claim where plaintiff's assertion that Bank of America promised her a HAMP modification "cannot be reconciled with her allegation that Bank of America *denied* her request for a HAMP modification").

The Tylers appear to allege that they relied on a promise of a HAMP modification specifically, not a promise of any modification. At the same time, the trial period plan told the Tylers that if they remained in compliance with the TPP and met certain conditions, such as providing RCS documents, and RCS determined that the Tylers qualified at the end of the trial period, RCS would send them a modification agreement. [18-6] at 5. Those are the same conditions the Tylers say they were told to comply with to obtain a HAMP modification. But the agreement contained no such promise. And in any event, the TPP itself was not an unambiguous promise of modification, as the modification hinged on the Tylers complying with the trial plan, and RCS confirming that they still qualified. That may have been a "provisional willingness to make a future commitment," but it was not an unambiguous promise. *See Taylor v. JPMorgan Chase Bank, N.A.*, No. 17-3019, 2020 WL 2079164, at *6 (7th Cir. Apr. 30, 2020) (dismissing promissory estoppel claim under Indiana law where TPP stated lender would modify mortgage "if" plaintiff "qualified"). And finally, the Tylers could not have relied on the TPP, because they sent it back by writing "under objection / noncompliance HAMP I, HAMP II and or

similar loan modification program." [18-6] at 5. Any reliance on a promise they flatly rejected was unreasonable, so their promissory-estoppel claim fails for that reason as well.[9]

### D.    Leave to Amend

Unless it is certain that amendment is futile, leave to amend should be freely given after an initial dismissal. *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018). It would be futile for the Tylers to amend the claims against Bank of America and Bank of New York Mellon. Nothing in the Tylers' brief or complaint suggests that the Tylers can state a claim against the banks. Counts I, II, and III are dismissed with prejudice. Likewise, amending the promissory-estoppel claim against RCS would be futile, because the record is clear that RCS did not promise the Tylers a HAMP modification when it offered them the trial plan, so Count V is dismissed with prejudice.

The court will give the Tylers one more opportunity to plead a viable ICFA claim against RCS. Although this was the Tylers' fourth complaint, it was the first

---

[9] The statute of frauds would not defeat the promissory-estoppel claim at this stage of the case. The statute of frauds is an affirmative defense, and as noted above, a complaint need not anticipate affirmative defenses. The Tylers say RCS and Bank of America promised them a modification "by way of Loan Modification agreements." That presumably means they received a written, not oral promise. Under Illinois law, a writing may be considered signed "even if it merely contains something which manifests that the instrument has been executed or adopted by the party to be charged by it." *CB Bloomington Prop., LLC v. Frontier N., Inc.*, 2018 IL App (4th) 170603-U, ¶ 17 (quoting *Just Pants v. Wagner*, 247 Ill.App.3d 166, 173 (1st Dist. 1993)). Nothing in the complaint suggests that the Tylers were engaging in oral communications with RCS, and the complaint does not allege that the promise was oral. The application of the statute of frauds is not plain from the complaint.

time the complaint was tested on its merits. Counts IV and VI are dismissed without prejudice.

## IV. Conclusion

Defendants' motions to dismiss are granted. The claims against Bank of America and Bank of New York Mellon are dismissed with prejudice. The promissory-estoppel claim against RCS is dismissed with prejudice. The ICFA and unjust-enrichment claims against RCS are dismissed without prejudice, with leave to amend. If an amended complaint is not filed by June 16, 2020, the dismissal will convert to one with prejudice and the clerk will enter final judgment.

ENTER:

Manish S. Shah
United States District Judge

Date: May 26, 2020

28