UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY R. TYLER and STEPHANIE M. TYLER, | |
| Plaintiffs, | No. 19 CV 7863 |
| v. | Judge Manish S. Shah |
| RESIDENTIAL CREDIT SOLUTIONS, INC., | |
| Defendant. | |

ORDER

RCS's motion to dismiss, [36], is granted. All claims are dismissed with prejudice. Enter judgment and terminate civil case.

STATEMENT

*Background*

In 2008, Congress passed legislation enabling the Secretary of the Treasury to create programs to assist homeowners and minimize foreclosures. *Taylor v. JPMorgan Chase Bank, N.A.*, 958 F.3d 556, 559–60 (7th Cir. 2020). One such program was the Home Affordable Modification Program, which gave banks incentives to allow eligible homeowners to refinance their mortgages. *Id.* Borrowers who qualified participated in a Trial Period Plan. If the borrower complied with the terms of the trial plan, the lender would offer a permanent loan modification. *Id.*

Plaintiff Timothy Tyler purchased a home in 2006. Since 2009, Tyler and his wife have been trying to obtain a HAMP modification. Their loan has been transferred to different servicers, including defendant RCS. The Tylers say that their various loan servicers and investors have falsely promised them a HAMP modification, threatened to foreclose on their home, delayed the modification process, and ultimately failed to provide the modification the Tylers say they were entitled to.

This is the Tylers' fifth attempt to state a claim. They filed a complaint in September 2018 under docket number 18-cv-06120 (N.D. Ill.) naming Bank of New York Mellon, Bank of America Corp., and Shapiro Kreisman and Associates LLC as defendants. Dkt. No. 18-cv-06120, [2]. They filed two amended complaints on that docket naming the two Bank of America entities, RCS, and Ditech Financial, LLC as defendants. Dkt. No. 18-cv-06120, [25], [47]. I dismissed the third amended complaint

without prejudice because the Tylers did not adequately allege Ditech's citizenship. Dkt. No. 18-cv-06120, [62]. Because the court lacked jurisdiction, I did not reach RCS and Bank of America's arguments for dismissal on the merits. The Tylers then filed a new complaint on this docket, and Bank of America and RCS both moved to dismiss. [8], [18].[1] I dismissed all claims against Bank of America as untimely and for failure to state a claim, dismissed the Tylers' promissory-estoppel claim against RCS with prejudice, and dismissed without prejudice their ICFA and unjust-enrichment claims. [30]. I also denied their motion to reconsider that dismissal. [38]. The Tylers filed an amended complaint bringing ICFA and unjust-enrichment claims against RCS. [32]. RCS now moves to dismiss. [36].[2]

*Legal Standards*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, I construe all factual allegations as true and draw all reasonable inferences in the plaintiffs' favor. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 893 (7th Cir. 2018).

*Facts*

In 2006, Timothy Tyler bought a house in Matteson and financed the property with Countrywide Mortgage. [32] ¶ 6. Countrywide went out of business and Bank of America began servicing the mortgage. [32] ¶ 6. In 2008, Shapiro Kreisman and Associates LLC initiated foreclosure proceedings against the Tylers. [32] ¶ 7. In 2009, the Tylers began what they believed to be a loan modification process with Bank of America under the HAMP program. [32] ¶ 8. Their loan was transferred several times, including to RCS. [32] ¶ 9. Between 2009 and 2015, the Tylers' loan servicers intentionally delayed their HAMP loan modification, refused to communicate with the Tylers or their representatives, and refused to provide a modification under HAMP. [32] ¶ 10. In April 2015, a judgment for more than $600,000 was entered against them in the foreclosure action. [32] ¶¶ 13, 21.

In December 2015, the Tylers entered into a loan modification agreement with RCS. [32] ¶ 12. The agreement required monthly payments of $5,639. [32] ¶ 12. The Tylers made three payments for October, November, and December 2015 in full dispute, for fear of losing their home. [32] ¶ 13. RCS accepted those payments, but in

---

[1] Unless otherwise noted, bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

[2] The court has diversity jurisdiction. The Tylers are citizens of Illinois, and RCS is incorporated in Delaware with its principal place of business in Texas. [32] ¶¶ 3–5.

February 2016, told the Tylers they were not eligible for a loan modification. [32] ¶ 13. In April 2016, the mortgage was transferred to another servicer, Ditech. [32] ¶ 14. Ditech instructed the Tylers to apply for a new modification, and said they had forfeited three previous payments. [32] ¶ 14. The next month, Ditech requested documents from the Tylers to complete its review for loan modification, which the Tylers took as a promise to modify the loan under HAMP. [32] ¶ 15. On July 6, while the foreclosure action was still pending, RCS threatened to sell the Tylers' home. [32] ¶ 16. At the same time, Bank of New York Mellon allowed a false affidavit to be filed in Cook County Court that valued the Tylers' house at $600,000, instead of $270,000. [32] ¶ 16. On July 25, 2016, the loan was transferred back to RCS. [32] ¶ 17. RCS approved another loan modification, with a $2,491.70 monthly payment. [32] ¶ 17. In October 2016, the Tylers entered into a loan modification agreement with Ditech. [32] ¶ 21. They claim that RCS induced them to rely on promises of a HAMP modification by offering trial payments and requesting documents (some of which RCS already had), then falsified reasons to deny them a HAMP loan. [32] ¶¶ 35, 38. Further, they say that RCS used the foreclosure lawsuit to pressure them into entering into a non-HAMP modification. The Tylers allege that RCS made more than $400,000 off of them by falsely promising them a HAMP modification and delaying their loan modification process. [32] ¶¶ 22–26. They spent $10,000 on attorneys, their credit score has been damaged, and because RCS refused to provide a HAMP loan, the mortgage remains underwater. [32] ¶¶ 22–24.

*Analysis*

The Illinois Consumer Fraud Act protects customers against "fraud, unfair methods of competition, and other unfair and deceptive business practices." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019) (quoting *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403 416 (2002)); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645–46 (7th Cir. 2019). To state a claim for an ICFA violation, a plaintiff must plead that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages, meaning pecuniary loss. *Vanzant*, 934 F.3d at 736; *Benson*, 944 F.3d at 647. The plaintiffs must also plead causation—that "but for the defendant's deceptive or unfair conduct," they would not have been damaged. *Vanzant*, 934 F.3d at 739.

An ICFA claim may be based on a deceptive act, an unfair act, or both. *Id.* at 738. The two types of claims are distinct, and different pleading standards apply to them. *Id.* If the claim is based on deception, Rule 9(b)'s heightened standard for pleading fraud applies. *Id.* Rule 9(b) requires a plaintiff to state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (quoting *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923

3

(7th Cir. 1992)). A plaintiff need not provide "the precise date, time, and location" of the misrepresentation, or "every word that was included," but something more than a general allegation that a misrepresentation occurred is required. *Id.*

Here, the Tylers have not materially changed their complaint, so the amended complaint suffers from the same defects as the first one. The Tylers argue only that RCS engaged in deception, not unfair practices, so the heightened standard of Rule 9(b) applies. They again do not plead any deceptive conduct with particularity. The only misrepresentations they identify with any modicum of specificity were not made by RCS. For example, they allege that Ditech requested documents from them, which they took as a false promise to modify their loan. [40] at 15. Ditech is not a defendant in this case, so that allegation cannot sustain the claim. Likewise, they reference a false affidavit filed in Cook County court, but they do not allege that RCS prepared that affidavit. [40] at 10. Beyond those allegations, the Tylers say they have pleaded the "when" and the "where" of their deception claim by alleging that RCS lied to them between June 2009 through July 2020, throughout the state of Illinois. [40] at 4, 10. And they cannot provide the "who" without discovery. [40] at 4. These allegations are insufficient. The Tylers cannot clear the 9(b) threshold by alleging that some unknown person, at some point over the course of 11 years, somewhere in the state of Illinois, lied to them about their loan modification. They have failed to state a claim for deceptive conduct under the ICFA.

If an ICFA claim is based on unfair conduct, rather than deception, only Rule 8 applies. *Vanzant*, 934 F.3d at 739. To determine whether a practice is unfair, courts consider three factors: whether the practice offends public policy; whether it's immoral, unethical, oppressive, or unscrupulous; or whether it causes substantial injury to consumers. *Id.* A plaintiff need not satisfy all three factors; a practice may be unfair because of the degree to which it meets one of the criteria or because it meets all three to a lesser extent. *Vanzant*, 934 F.3d at 739; *Benson*, 944 F.3d at 647. The Tylers do not argue that they have stated an unfairness claim, so I need not address whether their complaint plausibly alleges that RCS's conduct was unfair under the ICFA. If they had made such an argument, it would fail for the same reasons discussed in the prior order. *See* [30] at 20–22.

The Tylers' claim essentially boils down to their belief that they were eligible for a HAMP modification, and RCS did not offer them one. But there is no standalone cause of action under HAMP, so RCS's denying them a HAMP modification is insufficient to state a claim without more. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 559 n.4 (7th Cir. 2012). The Tylers had to identify some conduct on RCS's part that could plausibly qualify as deceptive or unfair within the meaning of the ICFA, beyond simply denying them the modification they wanted. They have failed to do so twice, and further amendment would be futile.

4

5

The unjust-enrichment claim is also dismissed with prejudice. The claim rests on the same conduct alleged in the ICFA claim, so it stands or falls with that claim. Because the Tylers have failed to state a claim under the ICFA, they have also failed to state a claim for unjust enrichment. *See Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019); *Vanzant*, 934 F.3d at 740; *Benson*, 944 F.3d at 648.

ENTER:

                                                                      Manish S. Shah
                                                                      United States District Judge

Date: September 21, 2020